**Affirmed and Memorandum Opinion filed April 29, 2022.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-20-00297-CV

## CHARLES GALLAGHER AND MARY GALLAGHER, Appellants

## V.

## MIRA VISTA HOMEOWNERS ASSOCIATION, INC., Appellee

**On Appeal from the 348th District Court**
**Tarrant County, Texas**
**Trial Court Cause No. 348-310601-19**

# MEMORANDUM OPINION

Two homeowners appeal the trial court's judgment following a bench trial, in which the trial court denied the homeowners' request for bill-of-review or collateral-attack relief from a default judgment rendered against them in favor of their homeowners' association. Concluding that the homeowners have not shown that the trial court erred in denying their requested relief, we affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 9, 2011, in *Mira Vista Homeowners Association, Inc. v. Charles Gallagher and Mary Gallagher*, Cause No. 348-250975-11 in the 348th District Court, Tarrant County, Texas (the "Underlying Case"), the trial court signed a default judgment, ordering that appellee/defendant Mira Vista Homeowners Association, Inc. recover from appellants/plaintiffs Charles and Mary Gallagher $14,334.32, reasonable attorney's fees of $2,500, court costs and interest (the "Default Judgment"). The trial court also ordered that Mira Vista was entitled to foreclosure of its assessment lien against the real property located at 6705 Medinah Drive in Fort Worth, Texas (the "Property"). The Property is the Gallaghers' homestead. In two affidavits of service filed in the Underlying Case, a process server testified that she personally served Charles Gallagher with the citation and petition on February 22, 2011, at 4:55 p.m. and that she personally served Mary Gallagher with the citation and petition on February 19, 2011, at 12:30 p.m.

After receiving notice that the Property was set to be sold at an execution sale in September 2019, the Gallaghers filed a petition in this case seeking an equitable bill of review or in the alternative asserting a collateral attack. The Gallaghers asked the trial court to set aside and vacate the Default Judgment, asserting that that judgment is void for lack of service of process in the Underlying Case. The Gallaghers asserted that neither of them had been served by the process server in February 2011 nor at any time prior to the date of the Default Judgment. The Gallaghers alleged that at no time prior to the date of the Default Judgment had either of them served with any other document from the Underlying Case. The Gallaghers alleged that their subdivision has a gated entry with a guard to screen non-residents and that the guard determines whether a non-resident may enter by contacting the homeowner. The Gallaghers suggested that because they never

received any such call from the guard, the process server could not have entered the subdivision to serve them. The Gallaghers asserted that because they were never served with process in the Underlying Case, they were denied notice of the Underlying Case. The Gallaghers claimed that they did not learn of the Default Judgment until August 2019.

The Gallaghers alleged that the certificate of last known address filed by Mira Vista under Texas Rule of Civil Procedure 239a in the Underlying Case stated that the zip code for the Gallaghers' last known address was "76122," when the correct zip code was "76132." The Gallaghers asserted a direct attack against the Default Judgment seeking bill-of-review relief and alleging extrinsic fraud. In the alternative, the Gallagher asserted a collateral attack against the Default Judgment. The Gallaghers sought a temporary restraining order, a temporary injunction, and a permanent injunction preventing the execution upon, foreclosure upon, or interference with the Gallaghers' access to and use of the Property.

The trial court signed a temporary restraining order and an agreed order extending the temporary restraining order. Mira Vista filed a brief in the trial court in which it asserted that the Gallaghers were not entitled to bill-of-review relief because they could not meet their burden of proving extrinsic fraud and because the four-year statute of limitations bars them from obtaining this relief. Mira Vista contended that the Gallaghers were properly served with process. Mira Vista attached to this brief a declaration from its representative and property manager, Lea Crow, in which she stated that she made arrangements for the process server to enter the subdivision to serve the Gallaghers. Crow also asserted that the process server was allowed in on the dates listed on the affidavits of service.

The trial court signed a temporary injunction and set the case for trial. Mira Vista filed an answer asserting the affirmative defense of the statute of limitations.

After conducting a bench trial,[1] the trial court signed a judgment in which the trial court effectively denied the Gallaghers' petition for bill of review. The trial court later filed findings of fact and conclusions of law in which the court stated:

- In making the findings of fact and conclusions of law the trial court took into consideration the evidence presented at trial, including the credibility of the witnesses.

- On or about August 9, 2011, the Default Judgment was entered.

- The return of service for Charles Gallagher in the Underlying Case states he was personally served on February 22, 2011, at 4:55 p.m.

- The return of service for Mary Gallagher in the Underlying Case states she was personally served on February 19, 2011, at 12:30 p.m.

- The Gallaghers filed their Original Petition for Bill of Review over eight years after the Default Judgment was entered.

- The Gallaghers failed to file their Original Petition for Bill of Review within four years after the Default Judgment was entered against them.

- The Gallaghers failed to establish extrinsic fraud to extend the limitations period for the Original Petition for Bill of Review.

- The Gallaghers failed to carry their burden of proving, with corroborating evidence, that they were not served with process.

The Gallaghers timely appealed the trial court's judgment. The Supreme Court of Texas transferred this appeal from the Second Court of Appeals to this court.[2]

## II. ISSUES AND ANALYSIS

A bill of review is an independent, equitable proceeding brought by a party

---

[1] No party requested a jury trial or paid the jury fee.

[2] In transfer cases, the transferee court must decide the appeal in accordance with the precedent of the transferor court under principles of stare decisis if the transferee court's decision otherwise would have been inconsistent with the precedent of the transferor court. Tex. R. App. P. 41.3.

4

to a prior action seeking to set aside a judgment in that action that is no longer subject to challenge by a motion for new trial or a direct appeal. *Baker v. Goldsmith*, 582 S.W.2d 404, 406 (Tex. 1979). Courts of equity always watch bills of review "with extreme jealousy," and the grounds on which bill-of-review relief will be allowed are "narrow and restricted" because the procedure conflicts with the fundamental policy that judgments must become final at some point. *Alexander v. Hagedorn*, 226 S.W.2d 996, 998 (Tex. 1950) (internal quotations omitted); *Vandervlist v. Samara Portfolio Management, LLC*, No. 14-16-00044-CV, 2017 WL 3194062, at *4 (Tex. App.—Houston [14th Dist.] Jul. 27, 2017, pet. denied) (mem. op.). Although a bill of review is an equitable proceeding, the fact that an injustice may have occurred is not sufficient to justify relief by bill of review. *Vandervlist*, 2017 WL 3194062, at *4.

Ordinarily, to be entitled to relief in an equitable-bill-of-review proceeding, the plaintiff must plead and prove that the plaintiff has (1) a meritorious claim or defense, (2) which the plaintiff was prevented from making by official mistake or by the opposing party's fraud, accident, or wrongful act, (3) unmixed with any fault or negligence on the plaintiff's part. *See Valdez v. Hollenbeck*, 465 S.W.3d 217, 226 (Tex. 2015). If an equitable-bill-of-review plaintiff carries the burden of proving that the plaintiff was not served with process, the plaintiff need not prove the first two elements and the law will deem the plaintiff to have established conclusively the third element. *See Caldwell v. Barnes*, 154 S.W.3d 93, 96–97 (Tex. 2004).

A bill of review must be brought within four years of the rendition of judgment in the underlying case. *See PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 275 (Tex. 2012); *Vandervlist*, 2017 WL 3194062, at *5. The four-year limitations period for filing a petition for an equitable bill of review may be tolled until the

5

plaintiff knew or should have known about the default judgment if the plaintiff proves that the challenged judgment was obtained by extrinsic fraud. *See PNS Stores, Inc.*, 379 S.W.3d at 275, 277 n.16; *Vandervlist*, 2017 WL 3194062, at *5. Courts allow a direct attack on a judgment on the basis of extrinsic fraud because such fraud distorts the judicial process to such an extent that it undermines confidence in the ability to discover the fraudulent conduct through the regular adversarial process. *PNS Stores, Inc.*, 379 S.W.3d at 275; *Vandervlist*, 2017 WL 3194062, at *5. Extrinsic fraud is fraud that denies a litigant the opportunity to fully litigate at trial all the rights or defenses that could have been asserted. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 752 (Tex. 2003). Such fraud must be purposeful in nature, and the element of purposeful fraud is important in establishing extrinsic fraud. *Vandervlist*, 2017 WL 3194062, at *5. Extrinsic fraud requires proof of some deception practiced by the adverse party that was collateral to the underlying case. *Id*. Fraudulent failure to serve a defendant with personal service, in order to obtain a judgment against him without actual notice to him, has been held to be extrinsic fraud. *Id*.

We review the denial of equitable-bill-of-review relief under an abuse of discretion standard. *Id*. In reviewing such a denial, we indulge every presumption in favor of the trial court's ruling, which we will not disturb unless it is affirmatively shown that there was an abuse of discretion. *Id*. The trial court abuses its discretion if it rules in an unreasonable or arbitrary manner, or without reference to any guiding rules or principles. *Id*. at *6. Under the abuse-of-discretion standard, challenges to the legal or factual sufficiency of the evidence are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *Id*. An abuse of discretion does not occur when the record contains some evidence of a substantial and probative character to support the trial court's

ruling. *Id.*

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See City of Keller*, 168 S.W.3d at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See City of Keller*, 168 S.W.3d at 827. The factfinder is the only judge of witness credibility and the weight to give to testimony. *See City of Keller*, 168 S.W.3d at 819. When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). After considering and weighing all the evidence, we set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Teel v. Shifflet*, 309 S.W.3d 597, 603 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). We may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Teel*, 309 S.W.3d at 603.

## A. Did the trial court err in determining that the Gallaghers failed to carry their burden of proving that they were not served with process in the Underlying Case?

In their second issue, the Gallaghers assert that the trial court erred in

7

determining that they failed to carry their burden of proving that they were not served with process. The trial court conducted a bench trial that included a trial on the issue of whether the Gallaghers proved by a preponderance of the evidence that they were not served with process. *See Caldwell*, 154 S.W.3d at 98 (stating that at a trial on a plaintiff's request for bill-of-review relief based on an allegation that the plaintiff was not served with process, the plaintiff "must establish by a preponderance of evidence that he was never served"); *Ward v. Nava*, 488 S.W.2d 736, 738 (Tex. 1972) (stating in a motion-for-new-trial context, that the question of whether a party was not served with process is a question of fact which must be determined by the trier of the fact and that the burden is on the party alleging no service of process to prove this fact by a preponderance of the evidence).

The mere testimony of Charles or Mary denying service of process, without evidence of facts or circumstances corroborating the denial of service, would not be sufficient to overcome the presumption that the process server's affidavit of service is correct, and this testimony would not suffice to meet the burden of proving that Charles or Mary was not served with process. *See Ward*, 488 S.W.2d at 738; *Seaprints, Inc. v. Cadleway Properties, Inc.*, 446 S.W.3d 434, 444 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The Gallaghers assert that they submitted sufficient evidence of facts or circumstances corroborating their denials of service, and Mira Vista argues to the contrary. Even if the Gallaghers submitted sufficient evidence of facts or circumstances corroborating their denials of service, the trial court, as finder of fact, was the sole judge of the credibility of the witnesses and the weight to be given their testimony, and this court still must determine whether the trial court erred in determining that the Gallaghers failed to carry their burden of proving that they were not served with process. *See Ward*, 488 S.W.2d at 737–38 (concluding in a motion-for-new-trial context in which an

officer in the return of service asserted that the movant had been personally served with process, that the high court could not disturb the trial court's implied finding that the movant's evidence did not establish lack of service by a preponderance of the evidence, even though the movant testified that he was not personally served with process and even though there was sufficient evidence of facts or circumstances corroborating the denial of service); *Office of the Attorney General v. Moore*, No. 14-18-00607-CV, 2019 WL 6317548, at *4 (Tex. App.—Houston [14th Dist.] Nov. 26, 2019, no pet.) (holding that the trial court in a bench trial on request for bill-of-review relief was the sole judge of the credibility of the witnesses and the weight to be given their testimony) (mem. op.); *Young v. Snowcon, Inc.*, 463 S.W.2d 225, 227 (Tex. Civ. App.—Houston [14th Dist.] 1971, no writ) (holding in the context of a motion to set aside a default judgment that the trial court as fact finder has the duty to weigh the evidence and the authority to discredit the testimony of the movant).

The trial evidence included (1) an affidavit of service filed in the Underlying Case, in which a process server testified that she personally served Charles Gallagher with the citation and petition on February 22, 2011, at 4:55 p.m.; and (2) an affidavit of service filed in the Underlying Case in which the same process server testified that she personally served Mary Gallagher with the citation and petition on February 19, 2011, at 12:30 p.m. This evidence was offered by the Gallaghers. The process server did not testify in person at trial. The trial record does not reflect why she did not testify, but on appeal, the Gallaghers assert that counsel for both parties sought to locate her before trial of this case and learned that she had died. We review the trial court's ruling based on the record before the trial court, and we do not consider the reason why the process server did not testify in person.

At trial Charles Gallagher testified as follows:

- Charles was not served on February 22, 2011, at 4:55 p.m.

- If somebody filled out an affidavit that said Charles was served on that date, that would be false.

- On February 22, 2011, Charles was in Santa Fe, New Mexico working for his company.

- Charles stayed in Santa Fe for "[p]robably 90 percent" of February 2011.

- Had Charles been served with a lawsuit, he would have contacted an attorney. He would have done something to protect his equity in the Property.

- The Property is the only home Charles had, and if he had been served with a lawsuit he would have protected the Property and not let his "home get sold out from under [him]."

- Had Charles been served, he would have told his wife Mary for certain, and Charles would have expected Mary to tell him if she had been served.

- Mary never told Charles that she had been served with a lawsuit.

- Charles did not receive any type of letter from the Tarrant County District Clerk's office telling him that a judgment had been entered against him.

- Mary never told Charles that she had received such a letter, and Charles would expect Mary to have told him if she had.

- The zip code where Charles lives is 76132.

- Mary was not served. If Mary had been served, she would have called Charles and told him.

- Though Charles was in New Mexico, he and Mary talked on the phone as to Mary's whereabouts.

- Based on Charles's conversations with Mary, Charles knows that Mary was with her mother because they did not have a caregiver, and that Mary left only to get groceries and maybe check the mail after her mother was asleep.

Mira Vista's counsel recited Charles's deposition testimony from two weeks

before trial, in which Charles stated that he knows Mary was taking care of her mother on February 19 and February 22 but that he does not know where Mary was "at that particular time." At trial, Charles did not remember what he said two weeks earlier at his deposition, when Mira Vista's counsel asked him where Charles was on February 19. But, Charles stated that he knows he was in Santa Fe. Mira Vista's counsel recited Charles's deposition testimony from two weeks before trial, in which Charles stated that he was "pretty sure" he was in New Mexico but that "it was eight years ago so I really don't know." Charles also stated that it was correct that he does not know on the specific dates where he was. When Charles was asked at trial if this deposition testimony was truthful, he answered that "[i]t probably was at the time, but I found out since then, I was definitely in New Mexico." Charles stated that he does not have any receipts showing where he was but that he had talked to people that were in New Mexico with him at the time. Charles did not identify any of these people, nor did any of these people testify at trial. Charles did not offer into evidence any documents in support of his testimony, such as records of airplane tickets, hotel stays, credit-card purchases, or documents from his company showing that Charles was in New Mexico when the process server said she served him with process. Charles did not testify that he looked for such documents but was unable to locate any.

At trial Mary Gallagher testified as follows:

- The zip code where Mary lives is 76132.
- Mary was not served by a process server on February 19, 2011, at 12:30 p.m.
- If Mary had been served, she would have called Charles and made sure they took care of the lawsuit immediately.
- If somebody filled out an affidavit that said Mary was served on February 19, 2011, at 12:30 p.m., that would be false.

11

- Mary began taking care of her mother on February 5 when her mother was released from a healthcare facility. Mary took her mother to her mother's house, thirty miles away from Mary's house, and stayed with her there until at least March 1.

- Mary stayed at her mother's house the whole day, and sometimes when her mother was asleep, Mary would go to Mary's house and get her mail every few days. Every time Mary returned to Mary's house, it was when her mother was asleep.

- Mary never received notice of an entry of a judgment from the Tarrant County District Clerk's office.

- Charles never told Mary that he had been served with a lawsuit filed by Mira Vista.

- If Mary had received notice of a judgment entered against her, she would have called Charles and retained an attorney.

- Mary had conversations with Charles during February 2011 so she knew where he was during that month.

- Mary heard Charles's trial testimony that he was in New Mexico, and she agrees with that testimony.

At Mary's deposition two weeks before trial, Mira Vista's counsel asked Mary if she had a personal recollection of Charles being in New Mexico on the day he was purportedly served with process. At trial Mira Vista's counsel asked Mary if she remembered how she answered that question. Mary said that she did not remember her exact words but that she must have said Charles was in Santa Fe, New Mexico because that is where Charles was. In fact, when asked at her deposition if she had a personal recollection of Charles being in New Mexico on the day he was purportedly served with process, Mary answered, "I have not yet, but I will." Mary admitted that at her deposition, she testified that she was with her mother at the hospital when Mary was purportedly served with process. At trial Mary testified that Mary's mother had been released from the hospital on February 5, 2011. Mary testified that she was with her mother for six weeks while her mother was in the hospital and then Mary "went straight to her [mother's] home to

12

take care of her." Mary did not offer into evidence any documents in support of her testimony, nor did Mary testify that she looked for such documents but was unable to locate any. Mira Vista did not call any witnesses or offer any documentary evidence.

At trial the Gallaghers had the burden of proving that they were not served with process in the Underlying Case. *See Caldwell*, 154 S.W.3d at 96–97. The process server testified in two affidavits that in February 2011 she personally served each of the Gallaghers with the citation and petition in the Underlying Case. Each of the Gallaghers testified that they were not served with process in the Underlying Case. As trier of fact, the trial court was the sole judge of the credibility of each of the Gallaghers and the weight to be given to their testimony. *See Moore*, 2019 WL 6317548, at *4. Thus, the trial court was free to discredit the testimony of each of the Gallaghers and credit the testimony of the process server in the two affidavits of service. *See id*. On this record and under the applicable legal standard, the trial evidence is legally sufficient to support the trial court's finding that the Gallaghers failed to carry their burden of proving that they were not served with process. *See id*. Under the applicable legal standard, the trial evidence is not factually insufficient to support this finding. *See id*.

The Gallaghers assert that if the trial court wanted to make a finding adverse to them on the service-of-process issue, the trial court should have found that each of the Gallaghers were served with process. Though the trial court could have made such a finding if the trial court wanted to do so, the only adverse finding on this point that was necessary was that the Gallaghers failed to carry their burden of proving that that they were not served with process. *See id.*; *Energy Maintenance Servs. Group I, LLC v. Sandt*, 401 S.W.3d 204, 213 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). This is the finding that the trial court made. We conclude

that the trial court did not err in determining that the Gallaghers failed to carry their burden of proving that they were not served with process. *See Ward*, 488 S.W.2d at 737–38; *Moore*, 2019 WL 6317548, at *4; *Young*, 463 S.W.2d at 227. Therefore, we overrule the Gallaghers' second issue.

## B. Did the trial court err in determining that the Gallaghers failed to establish extrinsic fraud so as to toll limitations and avoid the bar of the four-year statute of limitations?

In their first issue, the Gallaghers assert that the trial court erred in determining that they failed to establish extrinsic fraud so as to toll limitations and avoid the bar of the four-year statute of limitations. The Gallaghers argue that in the affidavits of service, the process server erroneously stated that she had personally served the Gallaghers with process in the Underlying Case and that these erroneous statements constitute extrinsic fraud that would allow the Gallaghers to obtain bill-of-review relief even though they filed this action more than four years after the trial court rendered the Default Judgment. *See PNS Stores, Inc.*, 379 S.W.3d at 275, 277 n.16. We presume, without deciding, that if the process server erroneously stated that she had personally served the Gallaghers with process, those erroneous statements would constitute extrinsic fraud. The Gallaghers had the burden of proving extrinsic fraud. *See PNS Stores, Inc.*, 379 S.W.3d at 275, 277 n.16; *Vandervlist*, 2017 WL 3194062, at *5. As discussed in the previous section, as trier of fact, the trial court was the sole judge of the credibility of each of the Gallaghers and the weight to be given to their testimony. *See Moore*, 2019 WL 6317548, at *4. Thus, the trial court was free to discredit the testimony of each of the Gallaghers and credit the testimony of the process server in the two affidavits of service. *See id*. Under the respective legal standards, the trial evidence is legally sufficient and not factually insufficient to support a finding that the Gallaghers failed to carry their burden of proving that the process server

14

made an incorrect statement in either affidavit of service. *See id*. The Gallaghers have not shown that the trial court erred in failing to determine that the Gallaghers established extrinsic fraud based on the allegedly incorrect statements by the process server. *See Ward*, 488 S.W.2d at 737–38; *Moore*, 2019 WL 6317548, at *4; *Young*, 463 S.W.2d at 227.

The certificate of last known address filed by Mira Vista under Texas Rule of Civil Procedure 239a in the Underlying Case stated that the zip code in the Gallaghers' last known address was "76122," when the correct zip code for the Property is "76132," as shown by the Default Judgment. The rest of the last known address for the Gallaghers supplied by Mira Vista in the certificate was correct. The record does not show that Mira Vista used an incorrect zip code in any other document. On appeal the Gallaghers suggest that this incorrect zip code in the certificate of last known address constitutes extrinsic fraud that would allow the Gallaghers to obtain bill-of-review relief even though they filed this action more than four years after the trial court rendered the Default Judgment. *See PNS Stores, Inc.*, 379 S.W.3d at 275, 277 n.16.

No trial evidence addressed how or why Mira Vista put the incorrect zip code in the certificate of the last known address for the Gallaghers. The only incorrect element was the use of the number "2" rather than "3" as the fourth number in the zip code. The evidence does not reflect that Mira Vista knew one address was the Gallaghers' last known address and yet provided a completely different address on the certificate of last known address. Based on the trial evidence, the trial court reasonably could have concluded that Mira Vista supplied the wrong zip code in the certificate of last known address by mistake or accident rather than as a deceptive act by Mira Vista in an effort to prevent the Gallaghers from discovering the Default Judgment. *See Vandervlist*, 2017 WL 3194062, at *5;

15

*Alderson v. Alderson*, 352 S.W.3d 875, 878 (Tex. App.—Dallas 2001, pet. denied).

The Gallaghers cite the opinion in *Mandel v. Lewisville Independent School District*, in which the court stated that "the Mandels point to no affirmative evidence or showing on the face of the record that rebuts the prima facie evidence of service established by the certificate of service, such as an incorrect address or zip code . . . ." 445 S.W.3d 469, 479 (Tex. App.—Fort Worth 2014, pet. denied). Because the *Mandel* case did not involve any issue of extrinsic fraud, we conclude that it is not on point. *See id*. at 471–85. The Gallaghers have not cited any case in which a court concludes that supplying the wrong zip code in the certificate of last known address constitutes extrinsic fraud. The Gallaghers have not shown that the trial court erred in failing to determine that the Gallaghers established extrinsic fraud based on the incorrect zip code in the certificate of last known address. *See Vandervlist*, 2017 WL 3194062, at *5; *Alderson*, 352 S.W.3d at 878.

Under the respective legal standards, the trial evidence is legally sufficient and not factually insufficient to support the trial court's finding that the Gallaghers failed to establish extrinsic fraud, and we conclude that the trial court did not err in determining that the Gallaghers failed to establish extrinsic fraud. *See Ward*, 488 S.W.2d at 737–38; *Moore*, 2019 WL 6317548, at *4; *Young*, 463 S.W.2d at 227; *Alderson*, 352 S.W.3d at 878. Therefore, we overrule the Gallaghers' first issue.

**C. Did the trial court err in failing to find that the Gallaghers were deprived of due process when they were not served with process in the Underlying Case?**

In their third issue, the Gallaghers assert that the trial court erred in failing to find that the Gallaghers were deprived of due process when they were not served with process in the Underlying Case. Under this issue the Gallaghers assert that even if the four-year statute of limitations bars them from obtaining bill-of-review relief, there is no time limit on their right to pursue a collateral attack on the

Default Judgment. The Gallaghers assert that the trial court erred in failing to grant their alternative collateral attack on the Default Judgment based on the alleged fact that they were not served with process in the Underlying Case. In a collateral attack, the party challenging the judgment has the burden of proving that the judgment is void. *See Armentor v. Kern*, 178 S.W.3d 147, 149 (Tex. App.—Houston [1st Dist.] 2005, no pet.). We presume for the sake of argument that the Default Judgment would be void if the Gallaghers were not served with process.

For the reasons discussed in section II.A. above, under the respective legal standards, the trial evidence is legally sufficient and not factually insufficient to support the trial court's finding that the Gallaghers failed to carry their burden of proving that they were not served with process, and the trial court did not err in determining that the Gallaghers failed to carry this burden. *See Ward*, 488 S.W.2d at 737–38; *Moore*, 2019 WL 6317548, at *4; *Young*, 463 S.W.2d at 227. Therefore, we overrule the Gallaghers' third issue.

## III.   CONCLUSION

As trier of fact, the trial court was the sole judge of the credibility of each of the Gallaghers and the weight to be given to their testimony. Thus, the trial court was free to discredit the testimony of each of the Gallaghers and credit the testimony of the process server in the two affidavits of service. Under the respective legal standards, the trial evidence is legally sufficient and not factually insufficient to support the trial court's finding that the Gallaghers failed to carry their burden of proving that they were not served with process. The trial court did not err in determining that the Gallaghers failed to carry their burden of proving that they were not served with process. The Gallaghers have not shown that the trial court erred in failing to determine that they established extrinsic fraud based

17

on allegedly incorrect statements by the process server that she served the Gallaghers with process. The trial court did not err in failing to sustain the Gallaghers' collateral attack based on the alleged fact that they were not served with process in the Underlying Case. Based on the trial evidence, the trial court reasonably could have concluded that Mira Vista supplied the wrong zip code in the certificate of last known address by mistake or accident rather than as a deceptive act by Mira Vista in an effort to prevent the Gallaghers from discovering the Default Judgment. Under the respective legal standards, the trial evidence is legally sufficient and not factually insufficient to support the trial court's finding that the Gallaghers failed to establish extrinsic fraud, and the trial court did not err in determining that the Gallaghers failed to establish extrinsic fraud. Having overruled all of the Gallaghers' issues, we affirm the trial court's judgment.


/s/     Randy Wilson
Justice

Panel consists of Justices Jewell, Spain, and Wilson.